[No. 17901-2-I.   Division One.   June 1, 1987.]

THE STATE OF WASHINGTON, *Respondent*, v. STEPHEN
D. RICE, *Appellant*.

*John Christiansen* of *Washington Appellate Defender
Association*, for appellant.

*Seth R. Dawson, Prosecuting Attorney*, and *David Hilt-
ner* and *Seth Aaron Fine, Deputies*, for respondent.

WEBSTER, J.—Appellant Stephen D. Rice appeals from
his judgment and sentence entered after a jury found him

guilty of second degree burglary. RCW 9A.52.030. Rice contends that the trial court erred by disallowing testimony revealing the circumstances under which the State's complaining witness made admissions contrary to his in–court testimony. We affirm.

## FACTS

On October 20, 1983, the State charged Rice with one count of second degree burglary. The State subsequently amended the information to state that the burglary was committed with intent to commit theft. Rice was tried by a jury and convicted as charged. At trial the evidence was conflicting as to whether Lenny Hahn had been burglarized or whether he had been swindled in a drug deal. The following testimony was presented:

## A
### TESTIMONY RELATING TO ALLEGED BURGLARY

Kathleen Walters stated that on September 27, 1983, she arrived home from work at approximately 1:30 p.m. No one was home and no cars were parked in front of the house. However, she noticed that her back door was open. At approximately 3 p.m. Walters' two sons arrived home, and they denied having left the back door open. Lenny Hahn, one of Walters' sons, stated that money was missing from his room, and he was angry at Walters for going into his room. Walters denied taking his money. The police were not called until that evening because the boys wanted to go find the money.

Hahn testified that on September 25 or 26, 1983, he had purchased a car stereo from Stephen Rice. Rice was in Hahn's bedroom when the purchase was made and observed Hahn remove the money from a metal box. Early in the day on which the money was allegedly taken, Rice had also come by to talk and had stayed for about a half hour. Rice drove a yellowish–gold Pinto and had large spider web tattoos on his arm. When Hahn returned home later that day, he found $600 missing from the metal box.

Hahn's neighbor, Tony Pressley, testified that on the day of the alleged burglary he was working outside on his truck from approximately 11:30 a.m. to 2 p.m. He saw a man drive up to Hahn's house in a gold Pinto at approximately 1:30 p.m. and go to the front door. Pressley, who was working 15 to 25 feet away from the man, noticed that he had spider web tattoos on his arm. It looked as though the man knocked on Hahn's front door. He then went around to the back of the house and left 3 or 4 minutes later.

Doris Dahl, mother of Stephen, Terry and Jeffrey Rice, testified that in September of 1983 Stephen and Terry left to go to California. On the same day or on the following day, she was approached by Hahn who stated that he had given Stephen Rice $500 for something and that Stephen was supposed to be back within 3 hours. She further stated that Hahn, who was very angry, admitted that the money related to a drug deal. At trial Hahn denied ever stating that he had loaned money to Rice or that he had given him money to purchase drugs.

Stephen Rice testified that on September 27, 1983, he had swindled Hahn in a drug deal. He told Hahn that he could get him a quarter pound of marijuana for $525. Around noon he went to Hahn's house and received $450 from Hahn for the marijuana. Stephen said that he would return in 3 hours. However, Stephen did not know where to buy the marijuana and never delivered marijuana to Hahn. He denied selling Hahn a car stereo or ever seeing Hahn's cash box. He further denied returning to Hahn's house later that day. After receiving the money, Stephen left with his brother Terry in the gold Pinto for California. Stephen admitted having spider web tattoos on his arms in September 1983.

Terry Rice testified that he was present in September 1983 when Stephen made a phone call about getting marijuana for someone. Stephen left around noon or 1 p.m. in a gold Pinto and returned in approximately 20 minutes with some money. Terry and Stephen then left for California.

Terry was in on the plan with Stephen to get the money so they could leave for California.

Jeffrey Rice testified that in late September of 1983 he and Skip Hartness were visiting at the home of a friend named Mindy Olson. Hahn, Hahn's brother, and another person came over. Hahn said he had given Stephen Rice money for drugs and he wanted to know where Stephen was because Stephen had taken off and never come back. Hahn said nothing about Stephen breaking into his house.

### B
### Testimony Suppressed Prior to Trial

Before trial the defense moved to admit Jeffrey Rice's testimony that Hahn's statements at Mindy Olson's house were made during the course of an assault and abduction. In his offer of proof, defense counsel said he would be calling at least one witness who would testify that Hahn, Hahn's brother, and another person came to Mindy Olson's house where Jeffrey Rice, Skip Hartness, and Mindy Olson were. They asked where Stephen was and Jeffrey said that he did not know. Hahn said that he had given some money to Stephen Rice and wanted it back. Jeffrey then saw one of the people with Hahn pull a shotgun out of the car. Jeffrey fled, but Skip Hartness and possibly also Mindy Olson were placed in the vehicle with Hahn, Hahn's brother, and the third person.

The court ruled not to admit any testimony concerning the assault, the shotgun, or the abduction because this testimony was irrelevant and any potential relevance was far outweighed by its prejudicial effect. However, the defense was allowed to elicit testimony concerning Hahn's statements made at Olson's house relating to the alleged swindle.

Stephen Rice was found guilty as charged. He appeals, claiming that the trial court erred by excluding testimony concerning the assault, the shotgun, and the abduction. He contends that this testimony was probative of the truth of the statements made by Hahn at Mindy Olson's house.

## STANDARD OF REVIEW

The relevancy of the evidence is a consideration within the discretion of the trial court. *Lamborn v. Phillips Pac. Chem. Co.,* 89 Wn.2d 701, 706, 575 P.2d 215 (1978). The trial judge has broad discretion in balancing the probative value of the evidence against its possible prejudicial impact. *State v. Hughes,* 106 Wn.2d 176, 201, 721 P.2d 902 (1986). *See generally United States v. Robinson,* 560 F.2d 507, 514–15 (2d Cir. 1977) (discussion of superior position of trial judge in being able to weigh probative value against prejudicial effect), *cert. denied,* 435 U.S. 905 (1978).

The court's decision on the relevance and prejudicial effect of the evidence may only be reversed upon a manifest abuse of discretion. *State v. Rupe,* 101 Wn.2d 664, 686, 683 P.2d 571 (1984); *State v. Kitchen,* 46 Wn. App. 232, 239, 730 P.2d 103 (1986). Abuse of discretion is "'discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" *State v. Tharp,* 27 Wn. App. 198, 206, 616 P.2d 693 (1980) (quoting *State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 26, 482 P.2d 775 (1971)), *aff'd,* 96 Wn.2d 591, 637 P.2d 961 (1981).

## RELEVANCY

Relevancy and the admissibility of relevant evidence are governed by ER 401 and ER 402, which state:

## RULE 401
### DEFINITION OF "RELEVANT EVIDENCE"

"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

## RULE 402
### RELEVANT EVIDENCE GENERALLY ADMISSIBLE; IRRELEVANT EVIDENCE INADMISSIBLE

All relevant evidence is admissible, except as limited by constitutional requirements or as otherwise provided by statute, by these rules, or by other rules or regulations applicable in the courts of this state. Evidence which is not relevant is not admissible.

The State argues that the assault and abduction by Hahn

are not probative of whether or not a burglary was committed. Rice, on the other hand, asserts that in the assaultive situation Hahn would be unlikely to fabricate a story against his interest: namely, that he had been swindled in an intended drug deal. Therefore, Hahn's actions at Olson's house were highly probative of the truth of his contemporaneous statements.

■ To be relevant, evidence must meet two requirements: (1) the evidence must have a tendency to prove or disprove a fact (probative value), and (2) that fact must be of consequence in the context of the other facts and the applicable substantive law (materiality). 5 K. Tegland, Wash. Prac. § 82, at 168 (2d ed. 1982); *Davidson v. Metropolitan Seattle,* 43 Wn. App. 569, 573, 719 P.2d 569, *review denied,* 106 Wn.2d 1009 (1986). The relevancy of evidence will depend upon the circumstances of each case and the relationship of the facts to the ultimate issue. *Chase v. Beard,* 55 Wn.2d 58, 61, 346 P.2d 315 (1959), *overruled on other grounds in In re Marriage of Brown,* 100 Wn.2d 729, 675 P.2d 1207 (1984). Relevant evidence encompasses facts that present both direct and circumstantial evidence of any element of a claim or defense. K. Tegland § 83, at 171. Facts tending to establish a party's theory of the case will generally be found to be relevant. *State v. Mak,* 105 Wn.2d 692, 703, 718 P.2d 407, *cert. denied,* 93 L. Ed. 2d 599 (1986).

Hahn's actions at Olson's house meet the relevancy requirements of probative value and materiality. Evidence of the assault and abduction tends to prove that Hahn was taken in a drug deal because it is unlikely that he would fabricate a story while committing such serious acts. Evidence that Hahn was swindled in a drug deal is material because it contradicts his story that he had been burglarized.

EXCLUSION OF RELEVANT EVIDENCE

ER 403 controls the exclusion of relevant evidence:

### EXCLUSION OF RELEVANT EVIDENCE ON GROUNDS OF PREJUDICE, CONFUSION, OR WASTE OF TIME

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

ER 403 contemplates a balancing process. The balance may be tipped toward admissibility if the evidence is highly probative or if the undesirable characteristics of the evidence are minimal. Conversely, the balance may be tipped toward exclusion if the evidence is of minimal probative value or if the undesirable characteristics of the evidence are very pronounced. By the very nature of the rule, each case must be decided on the basis of its own facts and circumstances. K. Tegland § 105, at 248.

█ The court here excluded the proffered testimony, finding that "the potential relevance, if there is any, is far outweighed by the potential prejudicial value." In determining whether or not there is prejudice, the linchpin word is "'unfair'". *State v. Bernson*, 40 Wn. App. 729, 736, 700 P.2d 758, *review denied*, 104 Wn.2d 1016 (1985). Almost all evidence is prejudicial in the sense that it is used to convince the trier of fact to reach one decision rather than another. K. Tegland § 106, at 249. However, "unfair prejudice" is caused by evidence that is likely to arouse an emotional response rather than a rational decision among the jurors. K. Tegland, at 250.

The court here did not abuse its discretion by excluding evidence of the assault and the abduction. First, this evidence could have inflamed the jury and elicited an emotional response against Hahn for committing the alleged assault and abduction. Second, this evidence could have confused the issues by focusing the jury's attention on the assault and abduction and away from the burglary. Finally, the probative value of this evidence is minimal. Some jurors would fail to make the connection between the assault and abduction and the credibility of Hahn's statements; they would just become confused. Moreover, defense counsel

14

could have called Mindy Olson and Skip Hartness to corroborate Jeffrey Rice's testimony.

We affirm.

RINGOLD, A.C.J., and GROSSE, J., concur.