# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| AFRIQUE V. NERO, individually and as Guardian of C.A. NERO, a minor, | No. 67371-8-I |
| Appellant/Cross Respondents, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| VIRGINIA MASON MEDICAL CENTER, a Washington nonprofit corporation; CYRUS CRYST, M.D. and JANE DOE CRYST, and the marital community comprised thereof; and JOHN DOES 1-10, | |
| Respondents/Cross Appellants. | FILED: March 11, 2013 |

APPELWICK, J. — The jury returned a verdict for Virginia Mason in Nero's medical malpractice lawsuit. Nero argues that she is entitled to a new trial, because the trial court admitted a clinic note that indicated Nero and her mother made racially charged statements to her doctor. The trial court did not abuse its discretion by admitting the unredacted clinic note. We affirm.

## FACTS

Afrique Nero's kidneys gradually failed due to kidney disease, and she began dialysis in 2001. In 2004, she received a kidney transplant at Virginia Mason Medical Center in Seattle.

Dr. Cyrus Cryst oversaw Nero's postsurgery treatment. But, soon after surgery Nero went to Alaska. While there, she became angry during an emergency room visit and thought she may lose her kidney because "they didn't know what they were doing." She also got into a disagreement with her doctor in Alaska and stopped receiving

medical care. She did not see any doctors or have any ordered lab work done for two months.

When Nero returned to Seattle, she resumed her relationship with Dr. Cryst. In November 2004, Dr. Cryst ordered a kidney biopsy and steroid pulse treatment. Nero had a phobia of needles and an aversion to steroid treatment and said something to the effect of "I would rather lose this kidney than go through any more of this." Eventually, her new kidney failed and she had to begin dialysis again. Nero was placed on "inactive status" for the kidney transplant list, because of ongoing problems with infections caused by dialysis catheters. She felt that she was not treated well at the dialysis center and skipped or cancelled many appointments. Ultimately, she was taken off the transplant list, because of her noncompliance with dialysis treatment.

Nero sued Virginia Mason, alleging lack of informed consent and negligence. She claimed that Dr. Cryst did not fully inform her of the consequences of her treatment, and that she adhered to all prescribed treatment. She also asserted that Dr. Cryst failed to meet the applicable standard of care by not timely pursuing treatment to combat rejection of her new kidney. Virginia Mason argued that Dr. Cryst met the standard of care and that Nero failed to comply with prescribed treatment.

Prior to trial, both parties designated voluminous medical records as admissible pursuant to ER 904. The records from Virginia Mason, including a large number of Dr. Cryst's notes and reports that were prepared contemporaneously with Nero's treatment, were eventually designated as exhibit 132. The exhibit includes records from June 16, 2004 until July 15, 2008 and spans approximately 300 pages.

2

The subject of this appeal is a portion of a three page clinic note in exhibit 132 from May 30, 2007. In the clinic note, Dr. Cryst outlines his concerns for Nero's continued treatment. Specifically, he explains Nero's frustration, her unjustified dissatisfaction with her medical team, and her resultant unwillingness to listen to advice.

Nero requested the May 30 appointment on short notice. When the hospital informed her it was difficult to work her in, because of the short notice, she accused the staff of being unprofessional and said they needed to stop whining and accommodate her. Nero stated that she did not want to hear about other patients' needs, that she has contacts high up in the Virginia Mason's administration, and that she would complain if Dr. Cryst and his staff did not better accommodate her. The paragraph of the clinic note at the heart of the controversy revealed racial tension in the doctor-patient relationship:

> [Nero] has made me uncomfortable emphatically stating she will not be mistreated based on race. Her mother joins in with statements like "don't make us go all black on you now." These statements are not appropriate and make me uncomfortable even said in a laughing way. I feel they are taunting me. It is always my goal to treat all my patients fairly regardless of ethnic background. I do not correct these statements because it only takes me farther from the real point of these clinic visits – [Nero]'s renal failure.

Dr. Cryst explained that Nero is not always willing to listen to advice and is quick to find fault with medical staff. The clinic note listed the efforts he took to appease Nero and get her on track for a new transplant. He apologized in response to Nero's unreasonable complaints. He avoided explaining the needs of other patients, because he knew it made Nero frustrated. He did not respond to Nero's accusations of racial bias. He filled out a burdensome form that Nero wanted to give to her phone company

3

to establish that she was on a transplant list and the company should not restrict or disconnect her phone service, even though he thought Nero's demand was unrealistic.

At trial, Dr. Cryst was briefly examined about the May 30 visit. He said that he did not talk with Nero about dialysis on that date, because she tended to get angry when she heard what she perceived as bad news. He was not asked about and did not mention Nero's accusation of racial bias, and the clinic note containing that accusation was not displayed to the jury. In fact, neither party suggests that racial themes were discussed at any time while the jury was present. However, at the close of trial, before exhibit 132 was admitted, Nero objected to the inclusion of the May 30 clinic note. She argued that the portion of the clinic note that revealed her accusation of racial bias should be redacted, because it lacked probative value and was unfairly prejudicial. The trial court rejected her argument. It admitted the unredacted clinic note along with the rest of exhibit 132 and thousands of pages of other exhibits.

The jury returned a verdict for Virginia Mason, and Nero appeals.[1]

## DISCUSSION

We review the trial court's evidentiary decisions for an abuse of discretion. Hizey v. Carpenter, 119 Wn.2d 251, 268, 830 P.2d 646 (1992). The trial court abuses its discretion when its decision is manifestly unreasonable or based upon untenable grounds or untenable reasons. Mayer v. Sto Indus., Inc., 156 Wn.2d 677, 684, 132 P.3d 115 (2006).

---

[1] Virginia Mason cross appeals, asserting that the trial court erred by refusing to give a proposed jury instruction that any damages awarded would not be subject to federal income tax. Because Virginia Mason won below and we affirm, we do not reach that argument.

4

Nero argues that the trial court abused its discretion by admitting Dr. Cryst's May 30 clinic note without redaction. She claims the challenged portion of the clinic note is both irrelevant and unfairly prejudicial.[2]

Relevant evidence is any evidence that has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. All relevant evidence is admissible unless its admissibility is otherwise limited. ER 402. The threshold is low, and even minimally relevant evidence is admissible. State v. Gregory, 158 Wn.2d 759, 835, 147 P.3d 1201 (2006).

Nero flatly states that the challenged comments are irrelevant, because they have nothing to do with whether Dr. Cryst ordered appropriate treatment or Nero complied with the ordered treatment. But, Nero also based her claim on failure to obtain informed consent. This implicates the adequacy of the professional information provided to her, her willingness to listen to that advice, her understanding of it, her consent, and her compliance. Virginia Mason's defense rested on showing that Nero was a difficult, noncompliant patient. The clinic note showed that she has a history of disagreements with medical staff, leading her to become frustrated with medical staff

---

[2] Virginia Mason makes a threshold argument that Nero waived her unfair prejudice objection by submitting the unredacted note as part of her ER 904 submission, and not timely objecting to Virginia Mason's ER 904 submission that also contained the unredacted note. ER 904(c) requires objections to a document submitted under ER 904 to be made within 14 days of the submission, with the exception that objections on the basis of relevancy may be made at trial. Virginia Mason asserts that Nero's objection to prejudice under ER 403 is not an objection to relevance under ER 402, which may be delayed until trial. We need not decide whether Nero waived her objection, because we conclude that the trial court did not abuse its discretion in refusing to redact the record.

and disregard ordered or recommended treatment. In front of that backdrop, any evidence that showed a strained relationship with Dr. Cryst was highly relevant. The May 30 clinic note explicitly lists possible triggers for Nero's frustration. She complained that Dr. Cryst's medical staff needed to place her needs above other patients' needs, that his staff was unprofessional, and that he treated her poorly based on racial bias. Dr. Cryst noted that Nero was difficult to deal with, because she did not listen to his advice and was quick to find fault with he and his staff. In sum, the clinic note as a whole showed a troubled doctor-patient relationship, explained Nero's lack of trust in Dr. Cryst, and demonstrated Dr. Cryst's awareness that Nero did not always listen to him. The comments of Nero and her mother for which redaction was sought demonstrated a strong oppositional posture to the doctor's comments. The challenged portion of the clinic note was an integral piece to the overall picture of the relationship. Clearly, the challenged portion of the clinic note was relevant.

We turn next to whether the challenged statements should have been excluded, because they were unfairly prejudicial. Under ER 403, the trial court may exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. The trial court has wide discretion in balancing the probative value of evidence against its potentially prejudicial impact. State v. Stenson, 132 Wn.2d 668, 702, 940 P.2d 1239 (1997).

Nero analogizes to a collection of cases to argue that Dr. Cryst's unredacted clinic note was unfairly prejudicial, because it appealed to racial stereotypes and revealed Nero's accusation of racial bias. Her argument discounts the balancing test required under ER 403, and suggests that racial references, immigration status, and

6

abortion history are categories of evidence that will trigger an irrational, emotional juror response and are therefore unfairly prejudicial and always require reversal.

In State v. Monday, the supreme court reversed based on racial references amounting to prosecutorial misconduct. 171 Wn.2d 667, 681, 257 P.3d 551 (2011). Monday did not involve balancing under ER 403. The prosecutor purposefully injected racial themes to attack witnesses' credibility on the sole basis of their race. Id. at 678. He argued that "'black folk don't testify against black folk'" and referred to the "police" as "'po-leese.'" Id. at 678-79. There was no factual support in the record for the proposition that only "'black folk'" adhere to a so-called antisnitch code. Id. at 678. The court came to the uncontroversial conclusion that a prosecutor may not "seek to achieve a conviction by resorting to racist arguments." Id. at 680. It explained that, "appeals by a prosecutor to racial bias" fundamentally undermine the principle of equal justice, because they "necessarily seek to single out one racial minority for different treatment." Id. In contrast, Virginia Mason did not purposefully inject racial themes to undermine Nero's credibility. In fact, it did not once mention race during the two week trial. The two sentences challenged by Nero were never referenced at trial. Rather, they were admitted into evidence at the end of trial along with hundreds of pages of Dr. Cryst's notes and reports, and thousands of pages of other exhibits. Unlike in Monday, the challenged portion of the clinic note is a recitation of statements made by Nero and her mother, not Dr. Cryst's commentary on Nero's race. Unlike in Monday, Nero does not argue that she and her mother did not make the statements or that they were incorrectly recorded, although she had an opportunity to mount that argument at trial. The malice exhibited in Monday is simply not present in this case.

7

In Salas v. Hi-Tech Erectors, an illegal immigrant sued a scaffolding company for negligence after he slipped on scaffolding that did not have a textured surface to prevent slipping. 168 Wn.2d 664, 667, 230 P.3d 583 (2010). The defense sought to admit evidence of the plaintiff's immigration status to establish that damages for lost future wages should not be valued in United States dollars. Id. at 667-68. The trial court admitted the evidence over the plaintiff's ER 401 objection. Id. at 669, 671 n.2. The supreme court determined that the plaintiff also preserved the issue of unfair prejudice pursuant to ER 403. Id. at 671 n.2. It undertook a lengthy discussion concerning the evidence's relevance and explained that immigration status alone is a poor indicator of the likelihood of being deported. Id. at 670. It noted that less than one percent of the unauthorized population was apprehended in 2008, that even an apprehended unauthorized immigrant is not necessarily deportable, and that removal can be cancelled for even a deportable immigrant. Id. Thus, the court concluded that the plaintiff's immigration status was only minimally relevant. Id. Compared to the low probative value of the evidence, it reasoned that "[i]ssues involving immigration can inspire passionate responses that carry a significant danger of interfering with the fact finder's duty to engage in reasoned deliberation." Id. at 672. The court held that the trial court abused its discretion, because the plaintiff's undocumented status was substantially outweighed by the danger of unfair prejudice. Id. at 672-73.

In Kirk v. Washington State University, the plaintiff became depressed and suicidal after an injury allegedly caused by the defendant. 109 Wn.2d 448, 450, 746 P.2d 285 (1987). The defendant sought to introduce evidence of the plaintiff's previous abortions as a possible source of the depression. Id. at 462. But, there was only a

tenuous showing that abortions could be linked to depression and no showing at all that there was an actual link in that case. Id. at 462-63. The evidence was therefore only minimally, if at all, relevant. Id. The trial court noted the community's negative attitude toward abortions and excluded the evidence pursuant to ER 403. Id. at 462. The supreme court only briefly discussed prejudice, but concluded that "[t]he prejudicial nature of this evidence is beyond question." Id. It affirmed the trial court's exclusion. Id. at 463. But, it suggested that exclusion would have been an abuse of discretion if there was evidence that the past abortions contributed to depression that predated the injury. Id. at 463.

None of these cases stands for the proposition that the mere mention of race, immigration status, or past abortions requires automatic exclusion of evidence. It is undeniable that racial issues, including accusations of racial bias, have the potential to trigger emotional responses and cloud a jury's judgment. But, exclusion is only required under ER 403 when probative value is substantially outweighed by unfair prejudice. State v. Rice, 48 Wn. App. 7, 13-14, 737 P.2d 726 (1987). Here, unlike in Kirk and Salas, the evidence was more than minimally relevant. The statements at issue were relevant to a central issue of the case: informed consent. It was relevant to whether Nero trusted her doctor, whether she listened to her doctor's advice, and whether she understood and complied with ordered treatment. The clinic note, including the challenged comments, established Nero's distrust in Dr. Cryst, her propensity to disregard Dr. Cryst's advice, and her tendency to place irrational blame on Dr. Cryst and his staff. When evidence is highly relevant, the risk of unfair prejudice must be much greater for exclusion to be warranted. The challenged statements are statements

9

that Nero and her mother made to or about Dr. Cryst, not that he made about her or her race. Nero has not established that the risk of unfair prejudice substantially outweighed the probative value of the evidence. The trial court did not abuse its discretion.

We affirm.

WE CONCUR: