CCURT OF APPEALS DIV I
2014 JUL 14 AM 9: 57

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 70144-4-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BRANDON JOSEPH EARL, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: July 14, 2014 |
| | ) | |

VERELLEN, A.C.J. — The right to present a defense does not entitle a criminal defendant to present minimally relevant evidence if the State has a compelling interest that outweighs the defendant's need for such information, especially where the trial court admits ample evidence pertinent to the defense theory.

Brandon Earl was convicted of rape of a child. His defense theory was that the reporting witnesses, the victim's mother and grandmother, were predisposed to assume the worst after he was found alone with the child and the child told her mother that Earl "told me not to tell" and told her grandmother that Earl "licked my pee-pee."[1] Earl presented evidence that the child's mother was molested as a child and argued that this biased the mother and grandmother. The trial court admitted the evidence that the mother was abused 20 years ago, but excluded evidence that the mother's abuser, a relative, was present at the same family gathering where Earl allegedly raped her

---

[1] Report of Proceedings (RP) (Jan. 30, 2013) at 284, 360.

daughter. Earl failed to present a foundation linking the identity and presence of the mother's abuser to his defense theory. The State's interest in excluding the potentially confusing and speculative evidence was compelling and outweighed Earl's minimal need to present the excluded evidence. The parties dispute whether an appellate court applies a de novo or abuse of discretion standard of review. Under either standard, we affirm. Earl was not denied his right to present a defense, and the ruling was within the trial court's discretion.

Earl also argues that the prosecutor's "we know" references in closing argument were misconduct. But he failed to object to the arguments, the arguments were not flagrant or ill intentioned, and a curative instruction would have negated any resulting prejudice.

We reject Earl's argument that cumulative error deprived him of a fair trial. His statement of additional grounds for review also lacks merit.

We affirm his judgment and sentence.

## FACTS

On December 24, 2010, Earl returned home from work to a family Christmas party. He went upstairs to his bedroom to rest. Several children, including Earl's son, were in his bedroom watching cartoons. Earl contends that he gave the children "raspberries," i.e., blew on their stomachs, and sent them downstairs. He later told officers that M.F., the three-year-old daughter of his wife's cousin, returned to the room.

M.F.'s mother testified that she became concerned when she saw most of the children downstairs, but not M.F. She decided to look for M.F. When she got to Earl's bedroom door and found it closed, she opened it quickly. She testified that Earl and

2

M.F. were in close proximity on Earl's bed, but they separated quickly when she opened the door:

> When I opened it, I could hear a bunch of commotion. I look around, and I can see Brandon coming from the left side of the bed, kind of readjusting, sitting up to the right side of the bed. The covers were over his bottom half, fully dressed. [M.F.] is more towards the foot of the bed on the left side.[2]

She carried M.F. out of the room. The mother testified that as she did so, M.F. said that Earl "told me not to tell."[3]

The mother took M.F. downstairs and tried to get M.F. to tell her what happened, but she would not. She took M.F. to M.F.'s grandmother. The mother found Earl's wife. The two conversed in a parked car.

While the grandmother was watching M.F., M.F. stated, "He licked my pee-pee."[4] The grandmother asked who did, and M.F. answered, "Brandon."[5]

That night, M.F. went straight to bed and slept in the clothes she had worn that day. M.F. told her mother as she was getting ready for bed that "[h]e made a mess down there."[6]

Two days later, December 26, 2010, the mother took M.F. to a sexual assault examination in Everett. M.F. made allegations consistent with her report to her grandmother that Earl had orally raped her. Evidence was collected, including a

---

[2] Id. at 279.

[3] Id. at 284.

[4] Id. at 360. The mother testified that there may have been confusion about M.F.'s exact words, whether she said "pee-pee," or "peep," or "pee." She explained that "Pee" or "peep" was the word that she and M.F. used to refer to a vagina. Id. at 294.

[5] Id. at 362.

[6] Id. at 296.

physical examination, DNA[7] swabs of M.F.'s body, and the clothes M.F. wore the night before. Police were given two pairs of underwear that M.F. had been wearing around that time. Male DNA was found on one of the pairs in an amount "more consistent with a body fluid deposit compared to a brief contact touch."[8] The DNA analysis disclosed a profile identical with Earl's, found in less than 1 in 5,200 males. Amylase, an enzyme found in saliva and other body fluids, was found on the inside of the crotch area of the same pair of M.F.'s underwear.

Earl admitted to police that he was alone with M.F. on his bed, that he placed his mouth on her exposed lower torso when "blowing raspberries," and emphasized that his face likely touched her vaginal area for "thirty seconds."[9] He gave conflicting statements about whether the contact with her vaginal area was over or under M.F.'s clothing.

Earl was charged with first degree rape of a child and tried by jury. M.F. was not competent to testify. Her mother, grandmother, and Earl's then ex-wife all testified at trial, along with forensic scientists and police officers. Earl's statement to police was admitted.

The jury convicted Earl as charged. The court imposed an indeterminate sentence with a standard range minimum of 113 months and a maximum term of life.

Earl appeals.

---

[7] Deoxyribonucleic acid.

[8] RP (Feb. 1, 2013) at 696.

[9] Exhibit 58 at 27.

## DISCUSSION

### *Right to Present a Defense*

Earl argues that the trial court violated his right to present a defense by excluding evidence potentially relevant to the jury's assessment of the reliability of the perceptions of M.F.'s mother and grandmother.

"The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations."[10] Defendants have the right to present relevant evidence; however, defendants have no constitutional right to present irrelevant evidence.[11] Relevance depends on "the circumstances of each case and the relationship of the facts to the ultimate issue."[12] Evidence of high probative value cannot be restricted, regardless of how compelling the State's interest may be, if doing so deprives a defendant of the ability to testify to their version of the incident.[13]

Evidence of "minimal relevance . . . 'may be excluded if the State's interest . . . is compelling in nature.'"[14] Such evidence "may be deemed inadmissible if the State can

---

[10] Chambers v. Mississippi, 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973).

[11] State v. Gregory, 158 Wn.2d 759, 786 n.6, 147 P.3d 1201 (2006). Testimony must be relevant to be admissible. ER 402. Evidence is relevant if it tends to prove or disprove the existence of a fact and that fact is of consequence to the outcome of the case. ER 401; Davidson v. Municipality of Metro. Seattle, 43 Wn. App. 569, 573, 719 P.2d 569 (1986).

[12] State v. Rice, 48 Wn. App. 7, 12, 737 P.2d 726 (1987). Evidence offered to impeach a witness is relevant if it tends to cast doubt on the credibility of the person being impeached and the credibility of the person being impeached is a fact of consequence to the action. State v. Allen S., 98 Wn. App. 452, 459-60, 989 P.2d 1222 (1999).

[13] State v. Jones, 168 Wn.2d 713, 720-21, 230 P.3d 576 (2010).

[14] Id. at 723 (quoting State v. Hudlow, 99 Wn.2d 1, 16, 659 P.2d 514 (1983)).

show a compelling interest to exclude prejudicial or inflammatory evidence."[15] The State's interest "is to preclude evidence that may interfere with the fairness of the trial."[16] "The State's interest in excluding prejudicial evidence must also 'be balanced against the defendant's need for the information sought,' and relevant information can be withheld only 'if the State's interest outweighs the defendant's need.'"[17]

Earl argues the court should review his claim de novo, citing State v. Jones.[18] The State argues that the trial court's decision whether to admit evidence, even when a constitutional challenge is raised, is reviewed for an abuse of discretion, citing our Supreme Court's decisions in State v. Darden[19] and State v. Hudlow.[20] Under either standard, we affirm.[21]

The trial court permitted Earl to elicit evidence that M.F.'s mother was molested as a child, but precluded questioning concerning the fact that her molester was a

---

[15] State v. Darden, 145 Wn.2d 612, 622, 41 P.3d 1189 (2002) (citing State v. Hudlow, 99 Wn.2d 1, 16, 659 P.2d 514 (1983) ("We believe the 'compelling state interest' requirement is the proper method of balancing the defendant's right to produce relevant evidence versus the state's interest in limiting the prejudicial effects of that evidence.")).

[16] Id.

[17] Jones, 168 Wn.2d at 720 (quoting id.).

[18] 168 Wn.2d 713, 230 P.3d 576 (2010).

[19] 145 Wn.2d 612, 41 P.3d 1189 (2002).

[20] 99 Wn.2d 1, 659 P.2d 514 (1983).

[21] Recently, in State v. Franklin, ___ Wn.2d ___, 325 P.3d 159, 162 n.2 (2014), our Supreme Court stated that an appellate court reviews a trial court's decision to exclude evidence for abuse of discretion, even though that case considered an evidentiary ruling implicating constitutional rights to present a defense. The court noted the presumption of prejudice if an evidentiary ruling denies a constitutional right, and makes no reference to the de novo standard of review.

relative who was at the same party where Earl allegedly raped M.F.[22] Earl contends

that this evidence "would have corroborated the defense theory that the mother's

accusation was the result of overreaction based on her own experience," and that the

trial court violated his constitutional right to present a defense by excluding it.[23]

The State argued to the trial court that the evidence was minimally relevant and

invited speculation:

> Basically, the argument here is that there is very little probative value and the prejudicial value is very high. Jurors have a hard time accepting or understanding that sexual abuse like this occurs at all. For evidence to come in that 20 years ago [the mother] was sexually abused by someone who ultimately pleaded guilty and served time, and after serving time in community custody was welcomed back into the family, I really don't see how that is very probative in anything but a speculative way to the relevant factors of this case.
>
> . . . I think it's an invitation for the jury to engage in improper speculation and to inject their inherently conflicted feelings about sexual abuse and sexual abuse victims into a case where they should really be concentrating on what happened between Brandon Earl and [M.F.] in that bedroom.[24]

Earl's counsel argued that the evidence was probative to the mother's state of

mind:

> [The mother] even said it was something more likely to make her be hypervigilant and more sensitive to these issues. It goes to her state of mind and can help the jury understand that kind of behavior.[25]

The trial court and Earl's counsel engaged in the following colloquy:

---

[22] It is not disputed that the relative who abused M.F.'s mother was present at the Christmas Eve gathering. After having served his sentence, the uncle was forgiven by the family and welcomed at family gatherings.

[23] Appellant's Br. at 1.

[24] RP (Jan. 28, 2013) at 183-84.

[25] Id. at 185.

COURT: Well, I will agree with you part way. I think it is probative that [the mother] was sexually abused as a child. I don't see who the defendant was at that time has any probative value.

COUNSEL: He was present that night with children in the house.

COURT: So what? There is no evidence that he was a suspect or likely a perpetrator of sexual abuse on [M.F.].

COUNSEL: I would never suggest that. I insist it goes to [the mother's] emotionality that night and her paranoia.

COURT: That's speculation. There is nothing to support that. The fact that she was a victim of sexual abuse I think explains her hypervigilance on the part of [M.F.]. I think you are entitled to let the jury know that. I think it has no probative value that [the mother's abuser] was the perpetrator of that sexual abuse and that he was present that night.[26]

The trial court granted the State's motion in part, limiting Earl's cross-examination of the mother to the fact of her own prior sexual abuse, but excluding details, including that the mother's abuser was present at the Christmas party where Earl allegedly abused M.F:

COURT: I'm not going to go down that road. The fact that [the mother] was sexually abused previously has probative value. Beyond that, I'm not going to allow the defense to get into that area. I just don't see the probative value. It invites the jury to speculate.[27]

Earl's counsel renewed the argument the following day, proposing limits on the cross-examination, agreeing not to use the evidence as other suspect evidence, and suggesting a limiting instruction to ensure against jury confusion.

The court declined to revisit its earlier ruling to exclude the evidence, explaining:

COURT: I think the defense can adequately argue its facts and theory to the jury in that the Court is allowing the defense to bring

---

[26] Id. at 185-86.

[27] Id. at 187.

8

out that [the mother] was sexually molested as a child. You can bring out the age that she was at that time.

. . . .

. . . But beyond that, getting into the facts of it . . . does invite the jury to speculate. . . . It further leads the jury to start confusing the evidence, the facts in this case with facts in the case years ago with [the mother].[28]

The critical inquiry is whether Earl's need for the information outweighed the State's interest in excluding the evidence. We conclude it did not.

The evidence Earl sought to admit was, at most, minimally relevant. Earl contends that the excluded evidence was relevant to his theory that the mother and grandmother were predisposed to believe the worst and jump to conclusions because of the abuse the mother suffered as a child and the grandmother's discovery of that abuse. But Earl did not offer expert opinion testimony or other evidence that the presence of the mother's abuser influenced the mother's or grandmother's perceptions at the time of Earl's offense. The impact of the presence of the mother's abuser on the mother's or grandmother's perception is not obvious. The abuse happened 20 years earlier. The mother long ago forgave the abuser, who is now a welcomed member of the family. Earl failed to persuasively link the identity and presence of the mother's abuser to his defense.

Earl's need for this evidence was minimal. Unlike Jones, the trial court here did not exclude all evidence related to the defense theory. The trial court admitted evidence that the mother was sexually abused 20 years earlier. The mother admitted that the prior abuse made her hypervigilant about her daughter and that she was

_____

28 RP (Jan. 29, 2013) at 206-07.

potentially overly paranoid about Earl being alone with her daughter on a previous occasion. These facts allowed Earl to argue his defense that the mother and grandmother were biased by the mother's earlier abuse trauma. Especially where the defense offers no foundation establishing the significance of the excluded evidence, the need for such minimally relevant evidence is marginal.

Evidence of minimal relevance "'may be excluded if the State's interest . . . is compelling in nature.'"[29] The State's interest in excluding the evidence was based on concerns that the admission of the evidence would invite the jurors to speculate and would lead them to confuse the evidence. These are valid considerations regarding the fairness of the fact-finding process. In the circumstances here, the reasons for exclusion outweigh Earl's minimal need for the evidence regarding the mother's past abuser.

Under either the de novo standard of review or the abuse of discretion standard, we conclude that there was no denial of the constitutional right to present a defense and that the evidence was properly excluded.

*Prosecutorial Misconduct*

Earl contends that the prosecutor committed misconduct in closing argument by "improperly aligning himself with the jury, placing the prestige of his office in the balance, and expressing a personal opinion on the complainant's credibility and Earl's guilt."[30] Particularly, Earl argues the prosecutor used "we" statements to suggest either

---

[29] Jones, 168 Wn.2d at 723 (quoting Hudlow, 99 Wn.2d at 16).
[30] Appellant's Br. at 22.

that the prosecutor and his office had determined certain facts to be established, or that the prosecutor and the jurors were on the same "side," with Earl on the other. Although he did not object at trial, he argues that reversal is required because the misconduct was incurable by instruction and substantially likely to affect the verdict.

To prevail on a claim of prosecutorial misconduct, a defendant is required to show that the prosecutor's conduct was both improper and prejudicial.[31] To establish prejudice, the defendant must show a substantial likelihood that the misconduct affected the verdict.[32] Where the defendant fails to object at trial, any errors are waived unless the misconduct was so flagrant and ill intentioned that an instruction would not have cured the prejudice.[33] We consider the prosecutor's alleged improper conduct in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the jury instructions.[34]

Earl challenges the following statements by the prosecutor:

I know it's hard to wrap your mind around the fact that how could someone be so bold and so stupid to do this during a Christmas party. That does boggle the mind, but so does the fact that these crimes happened at all. We know it did. It happened to [M.F.].[35]

He said he had never been alone with [M.F.] ever before this incident. It's on the tape. You can hear it for yourself. We know that's not true because of what we learned about that birthday party in the garage that happened a few weeks before all this in which we have multiple witnesses saying that [Earl] was alone with [M.F.] during that time.[36]

---

[31] In re Glasmann, 175 Wn.2d 696, 717, 286 P.3d 673 (2012).

[32] Id.

[33] Id.

[34] State v. Anderson, 153 Wn. App. 417, 430, 220 P.3d 1273 (2009).

[35] RP (Feb. 4, 2013) at 976-77.

[36] Id. at 981.

The defendant said that there were jeans or slacks on that child. We know that's not the case.[37]

The defendant said that there would be no reason—no reason—for his saliva, for his DNA, to be on the inside of that little girl's underwear. What have we just found out through a meticulous, rigorous course of testimony over the past week? We found out that, in fact, the defendant was wrong about that.[38]

Nothing in the prosecutor's arguments was sufficiently inflammatory as to be beyond reach of an appropriate curative instruction. Courts have discouraged the frequent use of the phrase "we know" and related formulations during jury arguments because the identity of the referenced group "we" may be ambiguous.[39] But the use of such phrases is generally improper only "when it suggests that the government has special knowledge of evidence not presented to the jury, carries an implied guarantee of truthfulness, or expresses a personal opinion about credibility."[40] Here, the prosecutor did not offer personal assurances about the credibility of the State's witnesses or imply the existence of corroborative evidence not admitted.[41] A prompt objection and curative instruction could have negated any potential prejudice. No objection was interposed

---

[37] Id. at 989.

[38] Id. at 992.

[39] United States v. Younger, 398 F.3d 1179, 1191 (2005).

[40] United States v. Bentley, 561 F.3d 803, 812 (8th Cir. 2009).

[41] See Younger, 398 F.3d at 1191 (no misconduct where prosecutors used the phrase "we know" to "marshal evidence actually admitted at trial and reasonable inferences from that evidence, not to vouch for witness veracity or suggest that evidence not produced would support a witness's statements"; Bentley, 561 F.3d at 812 (prosecutor's frequent use of "we know" during closing argument was proper reference to evidence presented to the jury and reasonable inferences that could be drawn from the evidence); United States v. Ruiz, 710 F.3d 1077, 1086 (9th Cir. 2013) (prosecutor's use of "we know" properly summarized evidence admitted at trial and reasonable inferences and did not suggest that evidence not admitted would support a witness's statement).

and no curative instruction was requested. Accordingly, the issue was waived by Earl's failure to object in the trial court.

## *Other Issues*

Because we determine there was no error in the exclusion of evidence and the issue of prosecutorial misconduct is waived, there was no cumulative error.

In his statement of additional grounds, Earl contends that M.F.'s mother and his ex-wife smoked marijuana the night of the alleged rape and that this was relevant to their ability to perceive events. But the record on appeal does not contain any of these alleged facts. On this record, no relief is warranted.

Affirmed.

WE CONCUR: