# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON, )
                     )  No. 63869-6-I
            Respondent, )
                     )  DIVISION ONE
        v.           )
                     )  UNPUBLISHED OPINION
JOSEPH NJUGUNA NJONGE, )
                     )
            Appellant. )  FILED: January 12, 2015
_____ )

APPELWICK, J. — Njonge appeals his conviction for second degree murder.[1] He asserts that the trial court improperly allowed the State to use evidence of the victim's character to rebut a component of his defense theory. He argues that his counsel was ineffective for failing to object to the allegedly improper character evidence. He contends that the court erred in admitting evidence of his prior bad acts to show his criminal propensity. He argues that the court wrongly allowed the State to use evidence of his prior bad acts to impeach his credibility. We affirm.

## FACTS

On March 18, 2008, 75 year old Jane Britt visited her husband, Frank Britt, at the Azalea Unit in the Garden Terrace nursing home.[2] Frank suffered from Parkinson's disease, and Jane visited him almost daily. After her March 18 visit, Jane left Garden Terrace in the early evening.

Jane's body was found the next day in the locked trunk of her car. Her cause of death was asphyxia due to strangulation with blunt force injuries to the head and neck.

_____

[1] This case comes to us on remand from the Washington Supreme Court. Pursuant to the Supreme Court's decision in State v. Njonge, ___ Wn.2d ___, 334 P.3d 1068 (2014), Njonge's public trial issues are not before us. We consider only his remaining evidentiary challenges and claim of ineffective assistance of counsel.

[2] Going forward, we use the Britts' first names for clarity. No disrespect is intended.

Additional injuries, likely occurring at or around the time of death, included injuries to her face, knee, hands, and wrists. Her neck was broken. Her fingernails were bloody, broken, and torn. Jane was fully clothed except for her shoes. The trunk was empty other than her body. The wheelchair normally located in Jane's trunk was discovered in the wooded area on the grounds of Garden Terrace, along with her garage door opener.

Police located deoxyribonucleic acid (DNA) under Jane's fingernails. Several Garden Terrace employees, including Joseph Njonge, voluntarily provided DNA samples to the police. The DNA located under Jane's fingernails matched Njonge's.

Njonge, a 24 year old nursing assistant, worked the evening shift at Garden Terrace. He had responsibility for the care of several patients, often including Frank. On the evening Jane was killed, Njonge worked from 2:30 p.m. to 10:30 p.m. He was assigned to care for Frank that evening.

The State charged Njonge with first degree murder. At trial, Njonge testified on his own behalf. He stated that on March 18, 2008, Jane scratched his hair while they worked together to assist Frank in the restroom. He also testified that Jane occasionally scratched his head or ran both of her hands through his hair, sometimes while they were in the facility dining room. According to Njonge, Jane "used to say I have kinky hair."

The State elicited testimony from two witnesses to rebut Njonge's explanation for the presence of his DNA evidence under Jane's fingernails. Sandra Colvin, the nurse who supervised Njonge's shift the night of Jane's death, testified that she had never seen Jane run her hands through Njonge's hair or otherwise touch or hug staff. Jane's granddaughter, Sarah Crass, explained that Jane was not a "touchy-feely grandma" and

2

did not touch the hair of her family members. Crass stated that she had never heard her grandmother use the word "kinky."

The State also presented several pieces of evidence to suggest that Njonge had a motive to kill Jane. First, the State showed that in March 2008—shortly before her death—Jane complained to Garden Terrace about the care of her husband's teeth. A Garden Terrace supervisor informed the staff, including Njonge, of that complaint. Second, the State demonstrated that Njonge won an employee recognition award in November 2007. Although one of the forms nominating Njonge for the award was purportedly signed by Jane, a forensic handwriting expert testified that Jane did not sign it. Third, the State showed that police found Frank's Costco card in Njonge's wallet upon arrest. Njonge admitted that he had taken the card without Frank's permission and tried to use it.

The jury found Njonge guilty of the lesser included offense of second degree murder. He appeals.

## DISCUSSION

Njonge makes several evidentiary challenges. We review a trial court's evidentiary rulings for abuse of discretion. Cox v. Spangler, 141 Wn.2d 431, 439, 5 P.3d 1265, 22 P.3d 791 (2000). A trial court has "broad discretion in ruling on evidentiary matters and will not be overturned absent manifest abuse of discretion." Sintra, Inc. v. City of Seattle, 131 Wn.2d 640, 662-63, 935 P.2d 555 (1997).

### I. Character Evidence Under ER 405

Njonge argues that the State presented improper evidence of Jane's character to rebut Njonge's explanation for the DNA found under his fingernails. Specifically, he

asserts that the trial court admitted character evidence by an unacceptable method of proof in allowing Colvin and Crass to testify about specific instances of conduct under ER 405(b).

The State contends that Njonge waived this error by failing to properly object at trial. Njonge objected to the testimony on the basis of relevance and prejudice. He did not object on ER 405 grounds. An objection made on other grounds does not preserve an evidentiary error for review. See State v. Guloy, 104 Wn.2d 412, 422, 705 P.2d 1182 (1985) ("An objection which does not specify the particular ground upon which it is based is insufficient to preserve the question for appellate review."). We decline to review this challenge. See RAP 2.5(a) ("The appellate court may refuse to review any claim of error which was not raised in the trial court.").

## II. Ineffective Assistance of Counsel

In the alternative, Njonge asserts that his trial counsel was ineffective for failing to object to Colvin's and Crass's testimony on ER 405 grounds.

We review de novo a claim of ineffective assistance of counsel. State v. Sutherby, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To prevail on an ineffective assistance claim, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness based on consideration of all the circumstances and (2) the deficient performance prejudiced the trial. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). More specifically, an appellant claiming ineffective assistance based on counsel's failure to object to the admission of evidence must show: (1) an absence of legitimate tactical reasons for the failure to object; (2) that an objection to the evidence would likely have been sustained; and (3) a reasonable probability that

the result of the trial would have been different had the evidence not been admitted. State v. Saunders, 91 Wn. App. 575, 578, 958 P.2d 364 (1998).

ER 405 establishes the acceptable methods of proving character. See ROBERT H. ARONSON AND MAUREEN A. HOWARD, THE LAW OF EVIDENCE IN WASHINGTON §§ 503.1-503.3 (5th ed. 2013). Njonge maintains that Colvin's and Crass's testimony violated ER 405(b). Under ER 405(b), specific instances of conduct may be offered as character evidence where that character is an essential element of a charge, claim, or defense. Njonge asserts that the testimony here was improper, because Jane's character was not an essential element of the charge or defense.

Njonge protests that the State improperly offered specific instances of conduct as to Jane's character. But, it was Njonge who introduced evidence of specific instances of conduct.[3] The State did not. Rather, the State elicited testimony that Jane was not "touchy-feely" with her family or the Garden Terrace staff.

Njonge asserted a defense predicated on Jane's character. The State was thus entitled to offer evidence of Jane's character in rebuttal. See ER 404(a)(2). To the extent that the testimony constituted character evidence, it was properly admitted under ER 405(a).[4] Njonge cannot show that an objection on ER 405 grounds would have been sustained. He cannot show counsel's performance was deficient. His ineffective assistance claim fails.

---

[3] Whether Njonge's evidence was properly admitted is not at issue here.

[4] "In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation." ER 405(a).

III. Evidence of Prior Bad Acts Under ER 404(b)

Njonge contends that the trial court erred in admitting evidence of the dental care complaint, the forged nomination form, and the Costco card to suggest that he had a motive to kill Jane.

Evidence of other crimes, wrongs, or acts is inadmissible to prove character and show action in conformity with it. ER 404(b); Carson v. Fine, 123 Wn.2d 206, 221, 867 P.2d 610 (1994). But, such evidence may be admissible for other purposes, like "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." ER 404(b). To admit evidence of other wrongs under ER 404(b), the trial court must (1) find by a preponderance of the evidence that the misconduct occurred; (2) identify the purpose for which the evidence is sought to be introduced; (3) determine whether the evidence is relevant to prove an element of the crime charged; and (4) weigh the probative value against the prejudicial effect. State v. Thang, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002). This analysis must be conducted on the record. State v. Foxhoven, 161 Wn.2d 168, 175, 163 P.3d 786 (2007). However, the failure to do so is not fatal if the record is sufficient to provide a basis for appellate review. See, e.g., State v. Brockob, 159 Wn.2d 311, 348-49, 150 P.3d 59 (2006); State v. Hepton, 113 Wn. App. 673, 688, 54 P.3d 233 (2002).

Njonge asserts that the trial court failed to balance the necessary factors on the record to admit the evidence under ER 404(b). The trial court did not conduct the full four factor analysis on the record. However, the record is sufficient for us to conclude that the evidence was properly admitted.

First, the State established by a preponderance of the evidence that the misconduct occurred. The State offered prima facie evidence of each incident: a Garden Terrace nurse testified that Jane made the dental care complaint and Njonge was aware of it; the State's handwriting expert testified that Jane's signature was forged on the nomination form through which Njonge received a cash award; and, detectives testified that they found Frank's Costco card in Njonge's wallet. The first factor is satisfied.

As for the second factor, the record is clear: the evidence was offered for proof of motive. ER 404(b) explicitly identifies motive as a permissible purpose.

The evidence is also relevant to prove an element of the crime charged. Each piece of evidence involved bad conduct that was somehow connected to Jane or Frank. This established a motive for Njonge to kill Jane: keeping his job. Motive is "particularly relevant" to premeditation. State v. Pirtle, 127 Wn.2d 628, 644, 904 P.2d 245 (1995). And, premeditation is an essential element of first degree murder. RCW 9A.32.030(1)(a); see also State v. Vangerpen, 125 Wn.2d 782, 791, 888 P.2d 1177 (1995).

Finally, we find that the evidence was not unduly prejudicial. Njonge singles out the Costco card, arguing that it was more prejudicial than probative because the State did not establish that Jane knew Njonge had the card. But, the card must be viewed in the context of the evidence together. Like most evidence, these incidents are prejudicial. See State v. Rice, 48 Wn. App. 7, 13, 737 P.2d 726 (1987). However, their probative value is clear. Collectively, they establish a motive for Njonge to kill Jane. The evidence satisfies the four factor test under ER 404(b).

Njonge further argues that the forged nomination form should have been excluded, because the State could not show that Njonge committed the forgery. For evidence of a

wrongful act to be admissible under ER 404(b), the "necessary connection between the defendant and the prior act must be established by a preponderance of the evidence." State v. Norlin, 134 Wn.2d 570, 577, 951 P.2d 1131 (1998). The State's handwriting expert could not conclusively determine that Njonge forged the form. Nonetheless, the evidence demonstrates a sufficient connection between Njonge and the forged form. The form submitted under Jane's name purported to praise Njonge's work performance. But, Jane did not sign the form. According to the handwriting expert, there were "indications that [Njonge] wrote the award form" and characteristics on the form that are similar to Mr. Njonge's handwriting characteristics. The form resulted in Njonge receiving a cash prize. Nothing in the record suggests that anyone but Njonge benefited from the forged document. On this record, the trial court could conclude by a preponderance that there was a connection between Njonge and the forged document.

The trial court did not abuse its discretion in admitting the State's ER 404(b) evidence.

IV. Impeachment Under ER 608

Njonge argues that the trial court erred in admitting evidence of his prior misconduct under ER 608. The State responds that Njonge failed to preserve this issue for review. We agree.

The State moved in limine to offer evidence that Njonge stole a diamond ring, a painting, and a credit card from Garden Terrace as specific instances of conduct to attack his credibility under ER 608(b). Njonge did not object on ER 608 grounds. Instead, he objected that the evidence was inadmissible under ER 609. The trial court ruled that the evidence could be used to impeach Njonge's credibility if he testified. The State raised

8

the issue once again before introducing the evidence. Njonge did not object and told the court "I have no issues." He later declined a limiting instruction related to this evidence. Njonge did not preserve the issue for appellate review.

We affirm.

Appelwick, J.

WE CONCUR:

Spearman, C.J.          Leach, J.