IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32723-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DENNIS NEAL GASTON, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Dennis Gaston appeals his conviction for child molestation in the second degree on numerous evidentiary grounds. He also contends the State committed misconduct during its closing statement. We hold that the trial court committed harmful evidentiary error by admitting a statement uttered by Gaston during a police interview to the effect that he suffered from "urges." We reverse his conviction and remand for a new trial.

No. 32723-0-III
*State v. Gaston*

FACTS

On an unidentified day in the spring of 2013, J.W., a minor, rode his bicycle from his mother's house to his grandmother's residence in picturesque Goldendale. While journeying across town, J.W. stopped when he saw an adult family friend, Dennis Gaston, in the latter's driveway. J.W. parked his bicycle in Gaston's driveway and walked to the carport where Gaston stood. The two conversed about cars, whether J.W. had a girlfriend, and whether J.W. engaged in sex with a girl. According to J.W., Gaston reached down J.W.'s loose blue jeans, underneath his underwear, and rubbed his penis for one to two minutes. Gaston asked J.W. if J.W. was getting hard. J.W. did not reply.

On August 29, 2013, Goldendale Police Officers Dwayne Matulovich and Leo Lucatero questioned Dennis Gaston at the Goldendale police station. The officers recorded and transcribed the interview. During the station interview, Gaston first claimed he only touched J.W. on the shoulder. Officer Lucatero prefaced the questioning with the kindly remarks:

> Now, Dennis, the reason—the reason we're seriously looking at this is because we—we've been starting to see a pattern. And um, I'm gonna be straight up with you about that. I had a situation here in 2010 with (Norman Escari), and it was almost identical to this, almost identical. And uh, we had a person come in here, um, awhile back, I was advised that uh, was complaining about um, uh, something to do with (B.J. Fox), that you were trying to get with him or something like that, and uh, so we're—we're starting to see a pattern here, and we're—we're concerned more than anything. You know, if- if they're—if—if you've got a problem with something, Dennis. . . . You know, a lot of people have problems, you know, that are serious problems sometimes, sometimes not, but there—

2

there—there are people out there that, you know, we all need help in certain areas in our life.

. . . .

You know, we all sometimes come up with these issues that we've got to deal with. If you've got anything like that, Dennis, you know, um, let's—let's try to nip it in the bud, let's try—um, there—there is things that—that we can—we can do as—as law enforcement and through the legal system to help you with those problems if—if you've got those problems, but the—the reason, you know, this isn't just a knock and talk. The reason I—you know, last time I was able to just go talk to you is we're looking at this a little bit more on the serious side, because we're starting to see a pattern here. And we're having a hard time believing that this boy just came up and made this whole thing up.

Ex. 1 at 5-6.

Officer Leo Lucatero spoke to Dennis Gaston in the third person:

You know, but we're giving you an opportunity right now to, you know, tell us straight up, you know, if you—if something happened, you know, um, let's talk about it, let's deal with it. If Dennis has got any issues that he needs to deal with, let's—let's get you the assistance you need, if that's the case, get you the help you need. You know, we don't—we don't hate you. We're not trying to be mean or—or give you a hard time, but if there's—there's anything going on, Dennis, where something did happen, let's—let's lay our cards out on the table, let's—let's be straight up with it, and if we need to get Dennis some help, let-let-let's do that. Let's do that to, you know, prevent something like this from happening again, you know, if that's—if that's the case. But um, you know, I—I dealt with the (Norman) case and got all his information and talked to you, and then when I come in today, I hear about this and I hear the details, and uh, you know, Officer Matulovich read it too, you know, and uh, we uh, compared notes and—and they're—it's just—for me it's just too many similarities to just shrug it off and say they're coincidence. Um, you know, we need— we're—we need to get down to the bottom of this and figure out what happened. Now we're giving you the opportunity right now, Dennis, to— to be straight up with us if something did happen. Did something happen?

Ex. at 6.

Dennis Gaston then conceded that he touched J.W. on the leg and later confessed to touching the boy on the thigh. He denied putting his hand in J.W.'s pants. Officer Lucatero declined Gaston's offer to touch the officer's leg in order to illustrate how Gaston touched J.W.

During the police station interview, Officer Leo Lucatero next told Dennis Gaston that an adult man in the community reported to police that Gaston solicited sex from him. Ex. at 8-9. Lucatero added:

> . . . But we're giving you an opportunity right now, Dennis, that, you know, if there's a problem, if you're dealing with something, you're having a hard time with something—maybe you have urges or something like that, um, let's help that. Let's help you, let's—let's help Dennis, let's get this taken care of, let's get it, you know, if you need, you know, treatment, anything like that. You know, a lot of people don't like to hear that, but, you know, it's not gonna get better, it's gonna get worse. You know, 'cause one situation was adult; now it's a kid, you know what I'm saying.
> . . . .
> [W]e're not here to say you're a bad person, Dennis, we're not. You know, I've known you for a long time. You're a good guy, you've always been real helpful. It's just that Dennis has some problems he needs to take care of. Let's do it now while it's in early stages, because you might even have it on your mind—you know, a lot of people—I've seen it over and over where people think, oh, this is a scary situation, you know, I'm just gonna say I didn't do it, and I just won't do it anymore. But then those urges take you over.

Ex. 1 at 10-11. During legal proceedings, Dennis Gaston contended that the two officers unfairly and repeatedly equated soliciting homosexual sex with pedophilia.

After Officer Leo Lucatero repeatedly told Dennis Gaston that the legal system could and would help him, Gaston discussed dealing with "urges." The admissibility at

4

trial of Gaston's admission of urges is the principal issue on appeal. Gaston informed the

two Goldendale officers:

> I've had urges. I'm not—I'm not gonna lie to you, either one of you, 'cause I like both of you and respect both of you.
>
> . . . .
>
> I've had urges. I haven't acted on them like I wanted to, you know, 'cause I know it's wrong.
>
> . . . .
>
> . . . but I thought there is no help, nobody—I don't think anybody really cares.
>
> . . . .
>
> You know, and I feel like if I did do something bad, I'd wind up going to jail, I'd wind up, you know.
>
> . . . .
>
> . . . [I]t would ruin my marriage and everything else—that why I haven't.
> . . . That's the only thing that probably stopped me, is . . .
>
> . . . .
>
> . . . the fact that I have a good wife.
>
> . . . .
>
> But, you know, I just feel like there's, you know, other than my world I work my ass off because—to keep from the urges.
>
> . . .

Ex. 1 at 12-13.

Late in the interview, Dennis Gaston mentioned being sexually abused as a boy by

an older male cousin. He then added:

> Well, and I've wanted [help]. I've actually went to counselors before and—they don't help, you know.

Ex. 1 at 16. Officer Leo Lucatero then asked Gaston to disclose his interaction

with J.W. during the spring day. Gaston would again only concede touching J.W.

on the thigh. Lucatero stated he did not believe Gaston, because Gaston had already conceded "urges." Ex. 1 at 17. Lucatero claimed to look into Gaston's eyes and see pain in Gaston's soul. Gaston insisted that all he could remember is touching J.W. on the thigh.

## PROCEDURE

The State of Washington charged Dennis Gaston with child molestation in the second degree. Dennis Gaston moved in limine, pursuant to ER 402 and 403, to exclude any mention regarding allegations of same sex sexual contact between him and adults. The trial court granted the motion.

The trial court conducted a CrR 3.5 hearing to determine the admissibility of Dennis Gaston's statements to the police during the August 29 interview. The State wished to read to the trial jury Gaston's comments about his urges. Dennis Gaston objected to the admission of these statements by referencing the order in limine previously entered by the trial court. Gaston added that his comments about urges constituted ER 404(b) evidence and was inadmissible for this additional reason. He contended that his comment did not amount to a confession of the crime, since he told the police officers that he did not act on his urges. In response to Gaston's ER 404(b) argument, the State did not contend that the testimony was admissible under one of the enumerated purposes in the evidence rule. This lack of a response is a significant factor in this appeal.

6

After hearing argument, the judge conducted an ER 403 balancing test on the

record, saying:

> It's a close call, and it's a potentially serious one. It's very
> probative, I think, of—of a state of mind that from the state's point of view
> might lead him to want to—solicit, or whatever the proper word is, some
> kind of physical contact with the child, which is what allegedly occurred in
> this case—not even for very many minutes, I don't think, but it was—
> contact that the state alleges was illegal, for the reasons that we all know.
> *It's also—very prejudicial.* I don't know how a jury would not—
> view this in the light favorable to the state's theory. Except to the extent
> that in his statement he does say, "That's why I haven't done it." He does
> kind of—suggest that although he's had urges he's never acted on them.
> That might work in the defendant's favor. But over all it seems pretty
> prejudicial to the defendant. *Maybe even the knock-down blow*; I don't
> know for sure.
> But having made that analysis, I think that the probative value
> outweighs the prejudicial nature. He was Mirandized—I guess we'll find
> out. This was in the form of a confession, or a long, rambling colloquy
> with officers. He volunteered this information. He just spoke plainly about
> it. And I agree with [the State] that it's in the context of the charge that was
> being alleged with the young man.
> So I'm going to allow those comments in.

Verbatim Report Proceedings (VRP) at 22-23 (emphasis added). In its ruling, the

trial court made no mention of ER 404.

Dennis Gaston also moved in limine, based on ER 801 and 802, to preclude Julie

Woolery, J.W.'s mother, from testifying because Gaston expected her to testify about

statements made by J.W. regarding the alleged crime. The trial court ruled that the

mother could testify to some of the events occurring after the alleged crime, but Woolery

could not testify to what J.W. told her.

During trial, Julie Woolery, J.W.'s mother, testified to events after the encounter between J.W. and Dennis Gaston. Dennis Gaston repeatedly objected during the testimony. Woolery testified she received a startling phone call from J.W.'s stepmother. The trial court sustained an objection to Woolery testifying to the contents of the call. Woolery, with her friend Sunday Sutton, retrieved J.W. Sutton is a mental health professional. The trial court, based on an order in limine, did not allow Woolery to testify what J.W. told her after she retrieved him, but the court allowed her to testify that J.W. told her something and this unidentified something led to her retrieving him.

J.W. and Julie Woolery called the police to report the incident. The police later interviewed J.W. at his home. The incident upset J.W. Woolery took J.W. to counseling.

At trial, J.W. testified inconsistently about the positioning of Dennis Gaston and him during the touching. J.W. first declared that Gaston gave him a "side hug" and later averred that the two stood facing each other. J.W. declared that he did not wish Gaston to feel uncomfortable during the incident. The State elicited testimony from J.W. about why he did not want Gaston to feel uncomfortable:

> A  Well, I looked down to see where he was putting his hand, and then I looked back up at him to acknowledge what he was doing, you know, 'cause I didn't—at that time I didn't really want him to feel uncomfortable—what he was doing. And I didn't say anything because I didn't—
> Q  What do you mean, you didn't want him to feel uncomfortable.
> A  Well, he was enjoying what he was doing, but—
> [Defense Counsel]: Your Honor, I'm going to object as far as it being speculative.
> THE COURT: If you could rephrase the question.

8

[Prosecutor]: Okay.

Q What do you mean that you didn't want him to feel— uncomfortable in—when you were looking at him. We can't—You don't really know what he was feeling, so—

[Defense Counsel]: Your honor, I'm going object as far as the form of the question. It's now coaching.

THE COURT: Overruled.

Q I just want you to say why you were not wanting him to feel uncomfortable.

A He was enjoying what he was doing and I don't like seeing people, you know, uncomfortable or anything, and—not only that but I didn't say anything because I wasn't sure what to say.

VRP at 88-89.

During trial, Officer Dwayne Matulovich read to the jury portions of the transcript of the recorded police station interview of Dennis Gaston. Goldendale Officer Dwayne Matulovich read the following excerpt about "urges" to the jury:

[Gaston]: I've had urges. I'm not—I'm not gonna lie to you, either one of you, 'cause I like both of you and respect both of you.

. . . .

I've had urges. I haven't acted on them like I wanted to, you know, 'cause I know it's wrong.

. . . .

. . . but I thought there is no help, nobody—I don't think anybody really cares.

. . . .

You know, and I feel like if I did do something bad, I'd wind up going to jail, I'd wind up, you know.

. . . .

. . . [I]t would ruin my marriage and everything else—that's why I haven't.

. . . .

That's the only thing that probably stopped me, is . . .

. . . .

. . . the fact that I have a good wife.

9

. . . .

But, you know, I just feel like there's, you know, other than my world I work my ass off because—to keep from the urges.

Ex. 1 at 12-13.

During closing arguments, the prosecution uttered the following comments that

Dennis Gaston contends constitute prosecutorial misconduct:

Sexual contact is described in Jury Instruction 9 as any touching— any touching—of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desires of either party.
And if you will recall, J.W. testified that as this event was happening Mr. Gaston was saying, "Are you getting hard," "*Are you enjoying this.*" So it doesn't necessarily have to be that Mr. Gaston was enjoying this, although there was some testimony to the effect that he was. If it's done for gratifying the sexual desires of either party. That's something to keep in mind.
. . . .
. . . There are some tremendous consistencies in what [J.W.] said. And that is what I want to focus on, here.
. . . .
Hands down pants. Under his underwear. Rubbed his penis. *Asked if he was enjoying it.* Asked if he was getting hard.
. . . .
. . . A once in a lifetime event. What was the once in a lifetime event. It was that a man put his hands down J.W.'s pants, rubbed his penis up and down, and *asked him if he was enjoying it* and he was getting hard.

VRP at 172-73, 179, 191 (emphasis added).

Also during closing, the State remarked about J.W.'s candor and a difficulty in

adults' comprehending incidents children encountered:

He's thirteen years old when this is going on. Now he's a very self-possessed thirteen years old, he's very direct. One of the things you may have noticed is, you know, he makes eye contact and he answers very

directly. Sometimes he's not asked—answering the question that the questioner seems to think they're asking, but he's answering the questions. *And he's very candid about it.*

> *In fact his candor is—is a little remarkable* in that he disclosed to one of Mr. Gaston's attorneys that there were times when he did lie, when—when he was afraid he was going to get in trouble.

> . . . .

> Ladies and gentleman, I know you'll do the right thing. You've been very attentive through all of this. And it's difficult facts. *These are difficult things to—to think that our children go through. . . .*

> . . . .

> . . . But he did not back down on what he was saying, and he continued to answer *candidly*.

VRP at 175-76, 197 (emphasis added).

The jury found Dennis Gaston guilty of child molestation in the second degree. The judge sentenced him to eighteen months in prison and thirty-six months' community custody. One of Gaston's community custody conditions ordered him not to "purchase, possess or view any pornographic material." Clerk's Papers (CP) at 98.

## LAW AND ANALYSIS

*Issue 1: Whether the trial court erred when admitting the "urges" testimony against an ER 402 relevancy objection?*

*Answer 1: No.*

Dennis Gaston contends that the trial court erred by admitting his "urges" comments during the police interrogation because the evidence was irrelevant under ER 401 and 402, was unduly prejudicial under ER 403, and was prohibited as character or past acts testimony under ER 404. We hold that the trial court did not abuse its discretion

11

when ruling the evidence to be relevant and not unduly prejudicial. We hold the trial court committed error under ER 404 by admitting the testimony. We first address the relevancy objection.

Dennis Gaston argues that the State used his confession to "urges" as a statement conceding to pedophilic cravings, when he was only admitting to homosexual inclinations. Thus, he contends his comments about yearning lacked relevance to the charge of child molestation. The State argues that Gaston's acknowledgment during the police interview is relevant because the urges more likely related to adolescent males, rather than encounters with adult males. Both parties may labor under the false alternative that Gaston's acknowledgment of impulses related to either adults or adolescents and did not pertain to both.

Under ER 401:

> "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Evidence which is not relevant is not admissible. ER 402. Relevance presents a very low bar. *Mut. of Enumclaw Ins. Co. v. Gregg Roofing, Inc.*, 178 Wn. App. 702, 729, 315 P.3d 1143 (2013), *review denied*, 180 Wn.2d 1011, 325 P.3d 914 (2014).

To be relevant, evidence must meet two requirements: (1) the evidence must have a tendency to prove or disprove a fact (probative value), and (2) that fact must be of

12

consequence in the context of the other facts and the applicable substantive law (materiality). *Davidson v. Metro. Seattle*, 43 Wn. App. 569, 573, 719 P.2d 569 (1986). The relevancy of evidence will depend on the circumstances of each case and the relationship of the facts to the ultimate issue. *Chase v. Beard*, 55 Wn.2d 58, 61, 346 P.2d 315 (1959), *overruled on other grounds*, 100 Wn.2d 729, 675 P.2d 1207 (1984). Relevant evidence encompasses facts that present both direct and circumstantial evidence of any element of a claim or defense. *State v. Rice*, 48 Wn. App. 7, 12, 737 P.2d 726 (1987). Facts tending to establish a party's theory of the case will generally be found to be relevant. *State v. Mak*, 105 Wn.2d 692, 703, 718 P.2d 407 (1986).

This court reviews relevance evidentiary rulings for manifest abuse of discretion. *State v. Russell*, 125 Wn.2d 24, 78, 882 P.2d 747 (1994). Discretion is abused only when no reasonable person would have decided the issue as the trial court did. *State v. Rice*, 110 Wn.2d 577, 600, 757 P.2d 889 (1988).

Given the background of Dennis Gaston's acknowledgment, the subject of his urges could be interpreted as adolescent males, adult males, or both. A reasonable person could infer that Gaston's confession referred to pedophilic urges, and this inference would tend to make it more likely that he would have touched a child for sexual gratification.

*Issue 2: Whether the trial court erred when admitting the "urges" testimony against an ER 403 prejudice objection?*

13

*Answer 1: No.*

Dennis Gaston also argues that, even if his confession to urges is relevant, reading his admission to the jury violated ER 403. The State contends that Gaston's yearnings acknowledgment is not substantially more prejudicial than probative. We agree with the State or at least agree that the trial court could reasonably accept the State's contention.

ER 403 declares:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

When administering ER 403, we recognize that nearly all evidence worth offering in a contested case will prejudice one side or the other. *Carson v. Fine*, 123 Wn.2d 206, 224, 867 P.2d 610 (1994). Evidence is not rendered inadmissible under ER 403 just because it may be prejudicial. *Carson v. Fine*, 123 Wn.2d at 224. Under ER 403, the court is not concerned with this ordinary prejudice. *Carson v. Fine*, 123 Wn.2d at 224. The trial court may reduce prejudice in the jury by proper instructions concerning its duty to weigh credibility and the standard admonition not to permit sympathy or prejudice to affect the verdict are the tools to direct the jury to a proper consideration of the evidence. *Carson v. Fine*, 123 Wn.2d at 224-25.

Courts variously define "unfair prejudice" for purposes of ER 403. Such prejudice is caused by evidence of scant or cumulative probative force, dragged in by the heels for

14

the sake of its prejudicial effect. *United States v. Roark*, 753 F.2d 991, 994 (11th Cir. 1985). In determining prejudice, the linchpin word is "unfair." *State v. Rice*, 48 Wn. App. at 13 (internal quotation marks omitted). Washington cases agree that unfair prejudice is caused by evidence likely to arouse an emotional response rather than a rational decision among the jurors. *Carson v. Fine*, 123 Wn.2d at 223 (1994); *Lockwood v. AC & S, Inc.*, 109 Wn.2d 235, 257, 744 P.2d 605 (1987); *State v. Cameron*, 100 Wn.2d 520, 529, 674 P.2d 650 (1983).

Under ER 403, the burden of showing prejudice is on the party seeking to exclude the evidence. *Carson v. Fine*, 123 Wn.2d at 225. There is a presumption favoring admissibility under ER 403. *Carson v. Fine*, 123 Wn.2d at 225. Because of the trial court's considerable discretion in administering ER 403, reversible error is found only in the exceptional circumstance of a manifest abuse of discretion. *State v. Gould*, 58 Wn. App. 175, 180, 791 P.2d 569 (1990).

The Washington Supreme Court has declared that, unlike a ruling to an objection under ER 404(b), the trial court need not weigh its decision on the record in the instance of an ER 403 objection. *Carson v. Fine*, 123 Wn.2d at 223. We question the wisdom of this declaration, because the reviewing court lacks the ability to determine whether the trial court abused its discretion when performing an ER 403 analysis unless we know from the trial court's oral comments that it weighed the appropriate factors. We need not address the prudence of the declaration in this appeal, however, since our trial court, on

15

the record, balanced the probative value versus the prejudicial effect of the admission of the urges testimony. As reasoned by the trial court, a jury could reasonably conclude that, based on the disclosure, Dennis Gaston held a sexual attraction to underage boys. A jury might reasonably conclude that a defendant will not molest an adolescent boy unless the defendant holds such inclinations. Although Gaston's concession was highly prejudicial, the acknowledgment was highly probative to the charge of child molestation in the second degree. We do not second guess the trial court, when the court conducted a balancing test on the record that comports with ER 403.

*Issue 3: Whether Dennis Gaston preserved for appeal an objection under ER 404(b) to his "urges" acknowledgment?*

*Answer 3: Yes.*

Dennis Gaston next contends that the trial court erred by failing to conduct an ER 404(b) analysis on the record about the admissibility of the "urges" testimony. ER 404 concerns the admissibility of a defendant's character and prior acts. We must address a procedural defense raised by the State, before reaching the merits of Gaston's argument. The State contends that Gaston never raised an ER 404(b) objection during the motion in limine hearing or at trial and only objected on the grounds of relevance and prejudice. We disagree.

RAP 2.5(a) states "[t]he appellate court may refuse to review any claim of error which was not raised in the trial court." Nevertheless, the Washington Supreme Court

16

has held that an objection based on prejudice suffices to preserve for appeal a challenge based on ER 404(b), because the challenge to the evidence suggests that the defendant is prejudiced by the admission of evidence of prior bad acts. *State v. Mason*, 160 Wn.2d 910, 933, 162 P.3d 396 (2007).

During the CrR 3.5 hearing, Dennis Gaston objected to the admission as evidence of his "urges" acknowledgment in part on the ground of prejudice. He went one step further and additionally mentioned ER 404(b). Dennis Gaston did not to object to the urges testimony during trial because of his earlier motion in limine. Pretrial motions, like motions in limine, create standing objections to the introduction of specific evidence. *See Millican v. N.A. Degerstrom, Inc.*, 177 Wn. App. 881, 889, 313 P.3d 1215 (2013), *review denied*, 179 Wn.2d 1026, 320 P.3d 718 (2014); *State v. Powell*, 126 Wn.2d 244, 255, 893 P.2d 615 (1995); *State v. Ramirez*, 46 Wn. App. 223, 229, 730 P.2d 98 (1986).

*Issue 4: Whether the trial court erred by failing to conduct an ER 404(b) analysis for the "urges" testimony?*

*Answer 4: Yes, but we hold that the testimony of urges was inadmissible regardless of whether the trial court performed an ER 404(b) analysis since the State does not contend an ER 404(b) exception applies.*

The trial court did not address Dennis Gaston's challenge to Gaston's concession to urges under ER 404(b). The trial court balanced the prejudicial effect to the probative impact of the evidence under ER 403, but did not on the record analyze all of the factors

17

required under ER 404. On appeal, Gaston argues that this omission was prejudicial error and thus he deserves a new trial. The State responds that the "urges" confession does not refer to an act, so ER 404(b) does not apply in this context.

Dennis Gaston's challenge anticipated that the State would argue that an ER 404(b) exception applies, thereby requiring an analysis on the record. Nevertheless, the State forwards no such contention. Therefore, no ER 404(b) analysis is needed.

We disagree with the State's contention that "urges" is not an "act" blanketed by ER 404(b). ER 404 reads, in part:

> **(a) Character Evidence Generally.** Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:
> (1) *Character of Accused.* Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same;
> . . . .
> **(b) Other Crimes, Wrongs, or Acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

ER 404(b) includes not only prior bad acts and misbehavior but any evidence offered to show the character of a person to prove the person acted in conformity with that character at the time of a crime. *State v. Foxhaven*, 161 Wn.2d 168, 175, 163 P.3d 786 (2007); *State v. Everybodytalksabout*, 145 Wn.2d 456, 466, 39 P.3d 294 (2002). Thus, the provisions of ER 404(a) overlap with the dictates of ER 404(b). In fact, ER 404(b) recognizes that evidence of prior acts is typically used by the State to show the

18

defendant suffers from a particular character defect. The very purpose of ER 404 is to exclude character evidence. *In re Meistrell*, 47 Wn. App. 100, 109, 733 P.2d 1004 (1987). In turn, ER 404(a) bars evidence of a person's character or a trait of character for the purpose of proving action in conformity therewith on a particular occasion. In no case, regardless of its relevance or probativeness, may the evidence be admitted to prove the character of the accused in order to show that he acted in conformity therewith. *State v. Gresham*, 173 Wn.2d 405, 420-21, 269 P.3d 207 (2012).

Evidence of one's character or prior acts may be admissible for some purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. ER 404(b). If the State seeks to introduce evidence for such an alternate purpose, the trial court must perform an analysis under ER 404(b). Before the trial court admits evidence of prior misconduct under ER 404(b), it must (1) find by a preponderance of the evidence that the prior misconduct occurred, (2) identify the purpose for admitting the evidence, (3) determine the relevance of the evidence to prove an element of the crime, and (4) weigh the probative value of the evidence against its prejudicial effect. *State v. Fisher*, 165 Wn.2d 727, 745, 202 P.3d 937 (2009); *State v. DeVincentis*, 150 Wn.2d 11, 17, 74 P.3d 119 (2003). The trial court must conduct the above analysis on the record. *State v. Asaeli*, 150 Wn. App. 543, 576 n.34, 208 P.3d 1136 (2009).

Since one of the elements of the ER 404(b) balancing test is the court's

19

identification of the purpose for admitting the evidence, the State must isolate for the trial court the ER 404(b) purpose or exception it contends applies to permit admissibility. Under an ER 404 analysis, a character trait may be admitted only if one of the exceptions applies. *State v. Gresham*, 173 Wn.2d at 421 (2012). The State did not address ER 404(b) below and does not argue, on appeal, that any of the qualifying purposes applies. The State only argues that ER 404 does not cover Gaston's urges admission because urges are not "acts." Thus we do not address whether "urges" could be considered motive testimony under ER 404(b). Furthermore, an ER 404(b) analysis is immaterial in Dennis Gaston's prosecution. If the State contends no exception applies, the trial court should have precluded the evidence and not engaged in any ER 404(b) analysis.

The State also contends that it introduced the admission of Dennis Gaston simply as a statement and not for the purpose of establishing that Gaston actually had urges or that he acted on those urges. The State fails to explain what relevance the statement would have to the charges brought against Gaston, assuming the State's contention to be true. ER 404(b) is designed to prevent the State from suggesting that a defendant is guilty because he or she is a criminal-type person who would be likely to commit the crime charged. *Foxhaven*, 161 Wn.2d at 175; *State v. Lough*, 125 Wn.2d 847, 859, 889 P.2d 487 (1995). The only purpose behind the State's introduction of Dennis Gaston's admission of inclinations would be for the purpose of telling the jury that Gaston possesses a trait that would lead him to commit the crime charged.

20

*Issue 5: Whether evidence of Dennis Gaston's urges was prejudicial?*

*Answer 5: Yes.*

A holding that the trial court committed error by permitting testimony of Dennis Gaston's impulses does not end our analysis. Evidentiary error is only grounds for reversal if it is prejudicial. *State v. Bourgeois*, 133 Wn.2d 389, 403, 945 P.2d 1120 (1997). An error is prejudicial if, within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected. *State v. Asaeli*, 150 Wn. App. at 579. Stated clearer, the error constitutes prejudice if it probably impacted the jury verdict.

Other than Dennis Gaston's recorded police interview, the State of Washington presented J.W.'s inconsistent testimony to establish criminal conduct of Gaston. In other words, the State lacked strong evidence of the crime. Thus, the "urges" testimony was likely detrimental to Dennis Gaston's defense. In the words of the trial court, the evidence could be "the knock-down blow." Thus, we reverse Dennis Gaston's conviction.

*Issue 6: Whether Dennis Gaston's trial counsel was ineffective by failing to preserve his ER 404(b) objection to his "urges" testimony or for failing to request a limiting instruction for the testimony?*

*Answer 6: We do not address this question.*

21

Dennis Gaston contends that, if trial counsel failed to preserve for appeal his ER 404(b) objection, he had ineffective assistance of counsel. He also contends that his trial counsel was ineffective because he failed to request an ER 105 limiting instruction for the urges testimony. We need not address these two contentions, since we hold that counsel preserved the objection and we sustain the objection on appeal.

*Issue 7: Whether Dennis Gaston preserved at trial the argument that the trial court erred by admitting J.W.'s testimony about Dennis Gaston's feelings?*

*Answer 7: Yes.*

Dennis Gaston contends that the trial court erred by admitting testimony from J.W. in which he speculates about how Gaston felt during the assault. We have already ruled that Gaston's conviction must be reversed and thus need not address this additional assignment of error. We address the assignment, nonetheless, for purposes of instruction for the new trial on remand. We address other assigned errors later for the same reason.

The State argues that Gaston waived this assignment of error by failing to renew his objection to a reworded question at trial. The relevant passage from trial reads:

> Q [the State] What do you mean, you didn't want him to feel uncomfortable.
> A [J.W.] Well, he was enjoying what he was doing, but—
> [Defense Counsel]: Your Honor, I'm going to object as far as it being speculative.
> THE COURT: If you could rephrase the question.
> [Prosecutor]: Okay.
> Q What do you mean that you didn't want him to feel—uncomfortable in—when you were looking at him. We can't—You don't

really know what he was feeling, so—

[Defense Counsel]: Your honor, I'm going object as far as the form of the question. It's now coaching.

THE COURT: Overruled.

Q I just want you to say why you were not wanting him to feel uncomfortable.

A He was enjoying what he was doing and I don't like seeing people, you know, uncomfortable or anything, and—not only that but I didn't say anything because I wasn't sure what to say.

VRP at 88-89.

The State focuses on the last question posed to J.W. in this exchange and notes that Dennis Gaston did not specifically raise an objection to the question. The State claims it rephrased an earlier question to which Gaston objected and that the lack of objection to the second question implies that Gaston approved of the rephrasing. Actually, the second remark by the State was not in the form of a question but a direction to J.W. as to the nature of the previous question. Alex Trebek would have been unhappy. Thus, there was no question to which Gaston could object. Since the trial court had already overruled objections to two questions, we hold that Gaston preserved his objection for appeal.

Without proper objection, there is no basis for appellate review. *State v. Boast*, 87 Wn.2d 447, 451, 553 P.2d 1322 (1976). When a party objects to evidence in a pretrial motion in limine, the party need not object at trial to the introduction of the same evidence. *State v. Powell*, 126 Wn.2d at 255 (1995); *Millican v. N.A. Degerstrom, Inc.*, 177 Wn. App. at 889 (2013); *State v. Ramirez*, 46 Wn. App. at 229 (1986). The same

23

rule should apply when a party seeks to admit the same evidence to which the opposing party immediately before objected during trial.

*Issue 8: Whether the trial court erred by admitting J.W.'s testimony about Dennis Gaston's feelings?*

*Answer 8: Yes.*

Dennis Gaston contends that J.W.'s testimony that Gaston "enjoyed" the touching was inadmissible as opinion testimony unsupported by a foundation. We agree.

ER 701 governs lay witness opinion testimony; the rule declares:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of rule 702.

Testimony based on inferences from the evidence is not improper opinion testimony. *City of Seattle v. Heatley*, 70 Wn. App. 573, 578, 854 P.2d 658 (1993). Nevertheless, an opinion that lacks proper foundation is not admissible under ER 701. *City of Seattle v. Heatley*, 70 Wn. App. at 579. A layperson's opinion is admissible only if it has a rational basis, which is the same as to say that the opinion must be based on knowledge. *State v. Kunze*, 97 Wn. App. 832, 850, 988 P.2d 977 (1999). A lay opinion is simply opinion based on knowledge derived from the witness's own perceptions, and from which a reasonable person could rationally infer the subject matter of the offered

24

opinion. *State v. Kunze*, 97 Wn. App. at 850. A lay person's observation of intoxication is the iconic example of a permissible lay opinion. *State v. Montgomery*, 163 Wn.2d 577, 591, 183 P.3d 267 (2008); *City of Seattle v. Heatley*, 70 Wn. App. at 580.

The testimony of J.W. that Dennis Gaston enjoyed the touching was not preceded by any testimony from J.W. as to the basis of his conclusion of enjoyment. Obviously, J.W. was adjacent to Gaston at the time of the touching, and J.W. could have seen expressions of pleasure on Gaston's face. J.W. disclosed that he looked at Gaston's face during the touching. Nevertheless, he never testified that he looked upon Gaston's face at the time he concluded that Gaston enjoyed the offensive touching. J.W. also testified he looked elsewhere during the touching. More importantly, J.W. divulged no physical manifestations that he observed on the face of Gaston nor any other observations that led him to conclude that Gaston enjoyed the touching.

In resolving this issue on appeal, we juxtapose two Washington decisions with contrary results: *State v. Farr-Lenzini*, 93 Wn. App. 453, 970 P.2d 313 (1999), and *City of Seattle v. Heatley*, 70 Wn. App. 573 (1993). In *State v. Farr-Lenzini*, we reversed Lisa Ann Farr-Lenzini's conviction for attempting to elude a pursuing law enforcement officer. The officer testified that Farr-Lenzini exhibited that she "was attempting to get away from me and knew I was back there and refusing to stop." 93 Wn. App. at 458. We ruled the admission of the evidence to be harmful error. The officer could not provide a lay opinion because he did not testify to any observations he made to

25

distinguish between a distracted, speeding driver and an eluding driver. The State attempted to qualify the officer as an expert witness, but the record did not indicate that the trooper was qualified to testify as an expert on the driver's state of mind.

In *City of Seattle v. Heatley*, we affirmed Robert Heatley's conviction for driving while intoxicated and negligent driving. Heatley sped and weaved on the road. A responding officer observed that Heatley's eyes were bloodshot and watery, his face was flushed, his balance was unsteady, and he exuded a "strong odor" of alcohol on his breath. The officer also heard slurred speech. The officer conducted field sobriety tests, during which Heatley swayed during a balance test and lost his balance while walking toe to heal. We agreed with the trial court's admission of the officer's conclusion that Heatley was intoxicated, because of the officer's physical observations.

Because we have already declared the admission of other testimony to be harmful error, we do not address whether admission of J.W.'s opinion testimony without a proper foundation constituted reversible error.

*Issue 9: Whether significant portions of the mother's testimony constituted prejudicial hearsay, improper vouching, or irrelevant evidence and whether trial counsel was ineffective for failing to object to the evidence on the respective grounds?*

*Answer 9: No. The trial court did not admit hearsay. We do not address the other contentions because Dennis Gaston does not cite to the portions of the trial transcript that he claims contains inadmissible testimony.*

26

Dennis Gaston brought a motion in limine to preclude Julie Woolery, J.W.'s mother, as a witness. The motion assumed that Woolery would only testify to statements uttered by J.W., and thus Gaston grounded the motion solely on the hearsay rule. The trial court did not preclude Woolery as a witness, but ruled that she could not testify to statements told her by her son.

On appeal, Dennis Gaston argues that some of Julie Woolery's testimony constituted prejudicial hearsay. We disagree. Consistent with the trial court's order in limine, Woolery did not repeat any statements spoken by J.W. to her. She testified that J.W. made a statement, after which she took particular actions, but she did not reveal the content of the statement. If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and that statement is not hearsay. *Cranwell v. Mesec*, 77 Wn. App. 90, 101, 890 P.2d 491 (1995). The testimony, about which Gaston complains, is one step further removed from being hearsay. Woolery did not disclose the contents of any of J.W.'s statements, let alone offer a statement for the truth of the contents.

Dennis Gaston also complains about some of Julie Woolery's testimony being irrelevant and impermissible vouching of J.W.'s allegations. In his discussion of this testimony, he refers to all of the testimony in general, rather than citing specific passages of testimony or particular questions and answers. RAP 10.3(a)(6) requires an appellant to cite to the relevant portions of the record in the argument section of his brief. A party

27

must cite to the record for the testimony about which he assigns error. *Glazer v. Adams*, 64 Wn.2d 144, 149, 391 P.2d 195 (1964). Therefore, we decline to address these further assignments of error regarding Julie Woolery's testimony. Since we will not address the merits of these assignments of error, we cannot determine if Gaston's trial counsel committed error by failing to object to testimony on relevance and impermissible vouching grounds. Trial counsel did object to some of the testimony on relevance grounds.

*Issue 10: Whether the prosecutor committed misconduct during closing argument by sympathizing with the jury, by arguing facts not in evidence, and by improperly vouching for J.W.?*

*Answer 10: No. The prosecution did not argue facts not in evidence nor improperly vouch for J.W.*

Dennis Gaston also contends that the prosecution committed misconduct during closing argument by misstating the evidence, improperly vouching for a witness, and appealing to prejudice. The State responds that the prosecutor's statements in closing did not rise to misconduct and, even if the statements did, the appropriate remedy was a curative instruction. We conclude that the prosecutor did not commit misconduct.

This court reviews a prosecutor's comments during closing argument in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the jury instructions. *State v. Boehning*, 127 Wn. App. 511, 519, 111 P.3d

28

899 (2005). A defendant claiming prosecutorial misconduct must show that the prosecutor's conduct was both improper and prejudicial in the context of the entire record and circumstances at trial. *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012).

A prosecutor's statements are improper if they misstate the applicable law, shift the burden to the defense, mischaracterize the role of the jury, or invite the jury to determine guilt on improper grounds. *State v. Emery*, 174 Wn.2d at 759-60; *State v. Boehning*, 127 Wn. App. at 522. Even if the defendant shows the comments were improper, the error does not require reversal unless the appellate court determines there is a substantial likelihood the misconduct affected the jury's verdict. *State v. Gentry*, 125 Wn.2d 570, 641, 888 P.2d 1105 (1995), *aff'd sub nom. Gentry v. Sinclair*, 705 F.3d 884 (9th Cir. 2013). If a defendant did not object to a prosecutor's alleged misconduct at trial, he or she is deemed to have waived any error, unless the misconduct was so flagrant and ill intentioned that a jury instruction could not have cured the resulting prejudice. *State v. Gentry*, 125 Wn.2d at 596. Reviewing courts should focus less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured. *State v. Emery*, 174 Wn.2d at 762. Under this heightened standard, the defendant must show that (1) no curative instruction would have obviated any prejudicial effect on the jury, and (2) the misconduct resulted in prejudice that had a substantial likelihood of affecting the jury verdict. *State v. Emery*, 174 Wn.2d at 760-61. Because Dennis Gaston did not object during closing argument, he now bears

29

the burden on appeal to demonstrate that the State's comments were so prejudicial that no curative instruction could have remedied their effect and that the comments had a substantial likelihood of affecting the jury verdict.

Dennis Gaston contends that the prosecutor committed misconduct by misstating the evidence. In closing argument, the prosecuting attorney has wide latitude to argue reasonable inferences from the evidence. *State v. Thorgerson*, 172 Wn.2d 438, 448, 258 P.3d 43 (2011). However, a prosecutor may not make statements that are unsupported by the evidence and prejudice the defendant. *State v. Boehning*, 127 Wn. App. at 519. A prosecutor's comments are reviewed in the context of the entire argument, the issues in the case, the evidence addressed in the argument and the instructions given to the jury. *State v. Schlichtmann*, 114 Wn. App. 162, 167, 58 P.3d 901 (2002).

State's counsel below misstated the evidence. During trial testimony, J.W. speculated that Dennis Gaston was enjoying touching J.W. During summations, the prosecutor repeatedly claimed that J.W. testified that Gaston asked J.W. whether J.W. enjoyed the touching. No chain of reasonable inferences led from one statement to the other. We anticipate the prosecutor refraining from making this error during the retrial. In the context of the first trial, however, the error was not prejudicial because, at each time the State misstated the evidence, the State coupled the mistake with J.W.'s testimony that Gaston asked if he "was getting hard." VRP at 86.

Dennis Gaston contends that the prosecutor improperly vouched for J.W. by

30

referring to his testimony as "candid." The State responds that the prosecutor's reference was a permissible inference from the evidence. We agree with the State.

The prosecutor and any other counsel commits misconduct by stating a personal belief as to the credibility of a witness. *State v. Warren*, 165 Wn.2d 17, 30, 195 P.3d 940 (2008). Prosecutors may, however, argue an inference from the evidence, and prejudicial error will not be found unless counsel unmistakably expresses a personal opinion. *State v. Brett*, 126 Wn.2d 136, 175, 892 P.2d 29 (1995). The defendant bears the burden to show that the prosecutor's statements constituted a clear and unmistakable expression of the prosecutor's personal opinion, divorced from the evidence. *State v. McKenzie*, 157 Wn.2d 44, 55, 134 P.3d 221 (2006).

In *State v. Sargent*, 40 Wn. App. 340, 343, 698 P.2d 598 (1985), the prosecutor stated "I believe Jerry Lee Brown. I believe him when he tells us that he talked to the defendant, that the defendant told him that he had beaten his wife in the past[.]" (Emphasis omitted.) This court held that the statement was misconduct because it was clearly and unmistakably an expression of the prosecutor's personal opinion. In *State v. Ramos*, 164 Wn. App 327, 341 n.4, 263 P.3d 1268 (2011), this court found improper vouching when the prosecutor argued that "the truth of the matter is [the police witnesses] were just telling you what they saw and they are not being anything less than 100 percent candid."

We contrast *State v. Warren*, 165 Wn.2d 17 (2008) with *State v. Sargent* and *State*

31

*v. Ramos.* In *State v. Warren*, the high court held that the prosecutor did not commit misconduct when he argued that "these statements had a 'ring of truth' and the detail was not the kind one would expect a 14-year-old to know absent abuse." 165 Wn.2d at 30. The statement was not an explicit statement of personal opinion.

Dennis Gaston's prosecutor, on three different occasions, discussed J.W.'s candor on the stand. All of the statements, when taken in context, were inferences from evidence. The prosecution couched each statement with facts about J.W.'s demeanor to support the argument that the witness was being honest. During Gaston's closing argument, he placed J.W.'s credibility into question. In response, the prosecutor emphasized J.W.'s demeanor to argue his credibility. The State should not be helpless in responding to an attack on its principal witness's credibility.

Dennis Gaston contends that, by making statements about what our children go through, the prosecutor improperly appealed to the jurors' sympathy. The State responds that the prosecutor was only acknowledging the difficulty of the situation. We agree with the State.

A prosecutor, as a quasi-judicial officer, has a duty to ensure a verdict free of prejudice and based on reason. *State v. Claflin*, 38 Wn. App. 847, 850, 690 P.2d 1186 (1984). Nevertheless, the heinous nature of a crime and its effect on the victim can be proper argument. *Claflin*, 38 Wn. App. at 850. We hold that the prosecutor's statement was a permissible comment on the effect of the crime on J.W.

32

*Issue 11: Whether cumulative error should result in a remand for a new trial?*

*Answer 11: We do not address this question.*

Dennis Gaston next contends that the cumulative error doctrine applies and this court should remand for a new trial. Under the cumulative error doctrine, a defendant may be entitled to a new trial when the trial court's multiple errors combined to deny the defendant a fair trial. *In re Pers. Restraint of Lord*, 123 Wn.2d 296, 332, 868 P.2d 835 (1994). We need not address this question since we remand for a new trial on the basis of one error.

*Issue 12: Whether the trial court erred when it imposed a community custody condition barring Dennis Gaston from viewing or possessing pornographic material because the condition is not reasonably crime related, is unconstitutionally vague, and is not narrowly tailored?*

*Answer 12: We do not address this question.*

Finally, Dennis Gaston contends that the trial court erred by imposing a community custody condition barring him from viewing or possessing pornographic material. He argues that this condition is not reasonably crime related, is unconstitutionally vague, and is not narrowly tailored. The State concedes this argument. We do not address the argument, however, since we vacate Dennis Gaston's conviction and sentence.

33

STATEMENT OF ADDITIONAL GROUNDS

Dennis Gaston raises four errors in his statement of additional grounds: (1) J.W. testified twice that nothing happened in the spring of 2013, (2) J.W. testified that his mother told him that the molestation occurred on a Saturday, (3) J.W.'s story changed multiple times, and (4) potential witnesses were never questioned or interviewed.

A criminal defendant may submit a pro se statement of additional grounds for review "to identify and discuss those matters related to the decision under review *that* the defendant believes have not been adequately addressed by the brief filed by the defendant's counsel." RAP 10.10(a). The rule additionally provides in part:

> Reference to the record and citation to authorities are not necessary or required, but the appellate court will not consider a defendant's statement of additional grounds for review if it does not inform the court of the nature and occurrence of alleged errors. Except as required in cases in which counsel files a motion to withdraw as set forth in rule 18.3(a)(2), the appellate court is not obligated to search the record in support of claims made in a defendant's statement of additional grounds for review. Only documents *that* are contained in the record on review should be attached or referred to in the statement.

RAP 10.10(c) (alteration in original); *see also State v. Alvarado*, 164 Wn.2d 556, 569, 192 P.3d 345 (2008). This court does not consider arguments that are repetitive of defense counsel's brief. *State v. Calvin*, 176 Wn. App. 1, 26, 316 P.3d 496 (2013), *review granted in part, cause remanded by* 183 Wn.2d 1013, 353 P.3d 640 (2015).

Dennis Gaston's first two contentions merely restate testimony admitted as evidence at trial without contending that the testimony was inadmissible. A recitation of

34

testimony presents no assignment of error. Gaston's third complaint that J.W. changed his story multiple times was the basis for his defense. His defense counsel explored the inconsistent testimony throughout the trial.

Finally, Dennis Gaston quarrels that counsel failed to summon to testify potential witnesses. This allegation falls outside of the record on review. Because the allegation is unsupported by the record or any other information, we do not address the contention.

## CONCLUSION

The trial court committed evidentiary error during the trial of Dennis Gaston. At least one of the errors was harmful and demands a new trial. We vacate Gaston's judgment and sentence and remand for a new trial.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Siddoway, C.J.

_____
Lawrence-Berrey, J.

35